UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JESSIE T.,[1]

          Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

          Defendant.

Case No. 6:20-CV-01365-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Jessie T. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is AFFIRMED.

    Plaintiff protectively filed for SSI on October 16, 2017, alleging disability beginning on October 16, 2017. Tr. 13. Her applications were initially denied on March 1, 2018, and upon reconsideration on July 18, 2018. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 28, 2019. Tr. 27. After receiving testimony from

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last name.

1 – OPINION AND ORDER

plaintiff and a vocational expert, the ALJ issued a decision on September 18, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 22. The Appeals Council denied plaintiff's request for review on February 24, 2020. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920;

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since October 16, 2017, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: fibromyalgia, anxiety, somatic symptom disorder, and trauma. Tr. 15. The ALJ recognized other impairments in the record, i.e., peripheral neuropathy and chronic fatigue syndrome, but concluded these conditions to be non-severe. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. With respect to plaintiff's mental impairments, the ALJ considered the paragraph B and C criteria. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. §§ 416.967(b) except she can occasionally climb ladders, ropes, and scaffolds. Tr. 17. The ALJ also found plaintiff can tolerate occasional contact with the general public. Tr. 17.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 20.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, such as inserting machine operator, electronics worker, and assembler. Tr. 21. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

**I.   Subjective Symptom Testimony**

Plaintiff contends the ALJ improperly discredited her testimony. Pl. Br. 8.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an

individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19. However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ found that plaintiff's statements were "inconsistent because [her] treatment records do not show that her impairments are as limiting as she has alleged." Tr. 18. The ALJ cited to many portions of the record, including: an October 16, 2017 treatment note that showed "sensation intact in hands and feet despite subjective feelings of diminished sensation," and a prescription for Cymbalta to treat "neuropathy versus fibromyalgia versus rheumatoid arthritis/osteoarthritis" (Tr. 350); January 2018 treatment records showing plaintiff had "never been to a Rheumatologist and declines to follow-up at this time," preferring instead to treat with "nutrition and lifestyle" (Tr. 419-20); March 2018 records in which plaintiff presented with left-sided neck pain consistent with tension headaches and received medication for muscle tension (Tr. 424); an April 2018 treatment note indicating plaintiff declined to take Cymbalta due to side effects (Tr. 405-06), although records did not reflect there was an issue with side effects when plaintiff was previously prescribed this medication; records from May 2018 showing plaintiff

completed a "Painwise" course but chose not to try any medications (Tr. 436); a June 2018 nutrition diagnosis that revealed plaintiff had numerous misconceptions about food, leading the nutritionist to suspect plaintiff's increasing weakness was related to prolonged inadequate protein intake and a significant decrease in physical activity (Tr. 442); a slip-and-fall report from July 2018 that described plaintiff was "difficult to assess" because her "pain is out of proportion to her exam" (Tr. 471); and a May 2019 rheumatology evaluation that showed moderate fibromyalgia pain and severe dysfunction and recommended a multimodal treatment approach, including physical and occupational therapy, psychotherapy, and medication, as well as a daily exercise program and moving and stretching (Tr. 468, 483). Tr. 18-19.

The ALJ concluded that plaintiff's treatment records showed "a diagnosis of fibromyalgia with no active treatment beyond encouragement for exercise," she "consistently declines medication and has exaggerated experienced side effects to avoid medication," she "has presented with pain out of proportion," and her "lack of ongoing treatment suggests that her impairments are not as limiting as she has alleged." Tr. 20.

Plaintiff argues the ALJ "never identified which testimony [the ALJ] found not credible, and never explained which evidence contradicted that testimony." Pl. Br. 12. Plaintiff relies on *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), where the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Id.* at 494. The Ninth Circuit held that "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Id.*

Here, the ALJ first identified plaintiff's statements in her function report in which she stated her ability to work was limited by mental effects of her fibromyalgia, she had difficulty

with focus and concentration, she was easily fatigued, and she was in a constant state of pain and exhaustion. Tr. 17. The ALJ also noted that, "[a]t the hearing, [plaintiff] testified that she is limited by migraine headaches that prevent her from functioning for 1 to 1.5 days at a time"; her fibromyalgia causes aching and pain in her body; she has begun experiencing neuropathy in her hands and drops things frequently; chronic fatigue results in near constant exhaustion; and her physical conditions impact her mental functioning, including "fibro fog" where she is unable to learn and retain information. Tr. 17. Then, as described above, ALJ went into great detail as to why plaintiff's statements were "inconsistent because [her] treatment records do not how that her impairments are as limiting as she has alleged." Tr. 18.

Contrary to plaintiff's contention, the ALJ did not merely summarize the treatment records without identifying specific inconsistences. For example, the ALJ observed that plaintiff testified that her fibromyalgia caused pain, but explained this was undermined by the fact that plaintiff declined medication, described pain that was out of proportion, and did not engage in "ongoing treatment." Also, plaintiff complained of chronic fatigue; however, the ALJ explained how there was evidence that plaintiff's fatigue was related to her diet and lack of exercise. Thus, there is no error based on *Brown-Hunter* here.

Plaintiff contends the ALJ failed to properly analyze her fibromyalgia-related symptoms pursuant to SSR 12-2P. *Id.* at 11. In support, plaintiff cites *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), in which the Ninth Circuit held that the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P. *Id.* at 12.

The Ninth Circuit has recognized that fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and

7 – OPINION AND ORDER

other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Id.* at 590; *see Revels*, 874 F.3d at 657 ("[The] diagnosis of fibromyalgia does not rely on X-rays or MRIs."). Common symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Benecke*, 379 F.3d at 590. Individuals suffering from fibromyalgia have "muscle strength, sensory functions, and reflexes that are normal," their "joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Revels*, 874 F.3d at 656 (internal quotations omitted). "SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" *Id.* at 657 (quoting SSR 12-2P at *6)).

Plaintiff takes issue with the ALJ's finding that she consistently declined medication and did not engage in ongoing treatment. Pl. Br. 12. An ALJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment in assessing a claimant's testimony. *Tommasetti*, 533 F.3d at 1039; *see also Sanders v. Saul*, No. CV-18-0266-TUC-LCK, 2019 WL 2996058, at *4 (D. Ariz. July 9, 2019) (finding the plaintiff's choice not to use available prescription medications for fibromyalgia, without explanation, was a specific, valid reason to find her symptom testimony not fully credible).

The ALJ discounted plaintiff's testimony because "[t]reatment records from January 2018 show that [plaintiff] had not seen a rheumatologist regarding her fibromyalgia and declined a referral." Tr. 18 (citing Tr. 419-20). The ALJ also cited plaintiff's stated preference not to "be on pills" and her intention to instead treat with nutrition and lifestyle. Tr. 18 (citing Tr. 419-20).

8 – OPINION AND ORDER

Indeed, records from January 3, 2018, indicate that plaintiff "has never been to a Rheumatologist and declines to follow-up at this time." Tr. 420. In fact, plaintiff did not see a rheumatologist until May 2019. Tr. 465. The January 3, 2018 records also show that plaintiff declined Cymbalta because she "does not want to be on pills." Tr. 419. Instead, plaintiff stated "[s]he would like to work on nutrition and lifestyle to reduce her pain currently." Tr. 420.

But, as the ALJ observed, a nutritionist found that plaintiff had "numerous misconceptions about food." Tr. 18 (citing Tr. 442). The nutritionist noted, for example, that plaintiff claimed to have a gluten intolerance, but she ate some types of bread, including sourdough and white bread, and had tested negative for Celiac disease. *Id.* (citing Tr. 442). The ALJ pointed to the fact that plaintiff was diagnosed with "[i]nadequate protein intake" and that her "nutritionist suspected her increasing weakness was related to prolonged inadequate protein and a significant decrease in physical activity." *Id*. In fact, the nutritionist's report states that plaintiff's "reduction in strength may be related to a decline in skeletal muscle as a result of prolonged inadequate protein intake, as well as a significant decrease in physical activity, especially resistance exercises." Tr. 442. Records dating back to July 2011 indicate that plaintiff's "[d]iet may . . . be low in protein," Tr. 232, and in May 2019, she reported that her current exercise was "[n]one." Tr. 466.

In sum, plaintiff rejected the recommendation of medical professionals to see a rheumatologist and take medication, and instead unsuccessfully pursued an alternative course of treatment including nutrition about which she had "misperceptions" and exercise that she did not perform. The ALJ properly discounted plaintiff's testimony based on her inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Tommasetti*, 533 F.3d at

1039. This was a specific, clear and convincing reason to discount her testimony and is supported by substantial evidence in the record.[2]

Plaintiff also claims the ALJ erred in finding that she exaggerated side effects to avoid taking Cymbalta. The ALJ observed that plaintiff had been prescribed Cymbalta in 2014 but explained that treatment notes from that time period do not reflect the side effects she reported in 2018. Tr. 18. Records show plaintiff started Cymbalta in August 2014 and was told to let the provider know how she was doing with the initial 40 mg daily dosage. Tr. 307. In January 2015, she described the Cymbalta was "not so helpful." Tr. 313. As the ALJ observed, the records contain no mention that plaintiff complained of any side effects. Other records show she stopped taking Cymbalta because she "does not want to be on pills" and chose to work on nutrition and lifestyle to reduce her pain. Tr. 419, 420. The ALJ's decision is supported by substantial evidence.

Finally, plaintiff argues the ALJ erred in finding her pain was "out of proportion," because "[d]isproportionate pain is typical and characteristic of fibromyalgia." Pl. Br. 12. In this regard, the ALJ cited to July 20, 2018 records indicating that plaintiff slipped on some wet flooring in a department store three days prior. Tr. 19 (citing Tr. 469). Although she landed only on her right side, she complained it had "flared up her entire body pain" and she could not "isolate her pain to one spot." *Id.* However, an x-ray of her right wrist showed no fracture, Tr. 473, and an exam of that wrist showed full passive range of motion, no erythema, swelling, deformity, or ecchymosis, and "[p]ain out of proportion to exam." Tr. 471. A right elbow exam

---

[2] Plaintiff argues that her OHSU Fibromyalgia Clinic records do not indicate a recommendation for Cymbalta. Reply 4. However, the records indicate that "[i]deally, [plaintiff] needs a multimodal approach which will include physical and occupational therapy, psychotherapy, and *medications*." Tr. 467 (emphasis added).

showed full active range of motion and no tenderness to palpation, *id.*, and a right shoulder exam showed full passive range of motion, "5/5 strengths," and "[p]ain out of proportion to light touch throughout." *Id.* A neck exam also showed "[p]ain out of proportion to light palpitation." *Id.*

Thus, the ALJ rejected plaintiff's subjective symptom testimony based on the opinion of a medical professional who, despite being aware of plaintiff's fibromyalgia diagnosis, observed that plaintiff's complaint about "entire body pain" was "out of proportion" to the slip-and-fall injury she had sustained.[3] Tr. 469. As noted, the Ninth Circuit has cautioned that those suffering from fibromyalgia "have muscle strength, sensory functions, and reflexes that are normal." *Revels*, 874 F.3d at 656; *see Martin v. Saul*, No. 2:18-CV-02911 CKD, 2020 WL 1305619, at *6 (E.D. Cal. Mar. 19, 2020) (finding ALJ erred in rejecting a doctor's opinion regarding the plaintiff's fibromyalgia on the basis that the assessed limitations were "out of proportion to objective evidence" where there were "findings [of] normal range of motion in all joints, normal gait, normal motor function, 5/5 muscle strength in the upper and lower extremities, normal reflexes and intact sensation"). But even if the ALJ committed error here, it is harmless, as the ALJ proffered other specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony.

## II.    Dr. Karsten Johnson, D.O.

Plaintiff contends the ALJ erred by improperly discrediting examining physician Dr. Karsten Johnson, D.O. Pl. Br. 13.

Plaintiff filed an application for benefits on October 16, 2017. Under the new regulations, effective for claims filed on or after March 27, 2016, ALJs no longer "weigh"

---

[3] Dr. Johnson, who performed a musculoskeletal exam on January 20, 2018, also reported that during the exam, plaintiff's "pain seemed somewhat out of proportion to the exam with poor eye contact. It appeared as if everything hurt with every type of range of motion testing." Tr. 395.

medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5867-68 (available at 2017 WL 168819); *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).  The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The new regulations require an ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).  "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).  However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but

12 – OPINION AND ORDER

not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

As an initial matter, the parties disagree about the relevance of Ninth Circuit case law in light of the amended regulations. Specifically, the parties dispute whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. *Compare* Def. Br. 11 *with* Reply 5. The Commissioner argues "[c]ase law creating a hierarchy of medical opinions and requiring ALJs to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting certain medical opinions has been superseded by the new governing regulations." Def. Br. 11.

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20

C.F.R. §§ 404.1520c(a). The court therefore considers whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of the medical opinions.

The ALJ observed that Dr. Johnson, a consultative examiner, performed a comprehensive musculoskeletal exam in which he concluded that plaintiff should be "limited to standing for no more than 4 hours during and 8-hour workday and walking for no more than 3 hours during an 8-hour workday." Tr. 20 (citing Tr. 387-96). Dr. Johnson also "found limitations in crouching, crawling, running and in carrying items over 25 pounds," and noted plaintiff "exhibited pain with every type of range of motion testing." *Id.* The ALJ found "[t]his opinion is not persuasive because Dr. Johnson fails to articulate if the functional limitations result from [plaintiff's] impairments or from her pain allegations." *Id.* The ALJ observed, "[i]t appears that the limitations result from [plaintiff's] pain allegations because Dr. Johnson's range of motion table demonstrates normal range of motion in most areas tested." *Id.* (citing (SF/8-9)). The ALJ concluded, "[i]n light of [plaintiff's] lack of treatment and full range of motion, the above RFC does not include postural limitations other than for climbing ladders, ropes and scaffolds." *Id.*

Plaintiff argues the ALJ again failed to consider SSR 12-2p and "attempted to draw a line between Plaintiff's subjective reporting of pain and Plaintiff's normal strength and sensation test results." *Id.* Plaintiff contends that fibromyalgia "is characterized by 'muscle strength, sensory functions, and reflexes [that] are normal,'" Pl. Br. 14 (quoting *Rollins*, 261 F.3d 853, 863), but the "ALJ did not consider that Plaintiff's underlying disorder sufficiently explained any discrepancy between observable strength and sensation and Dr. Johnson's functional assessment." *Id.*

The ALJ limited plaintiff to light work, which is not inconsistent with Dr. Johnson's opinion that plaintiff should be "limited to standing for no more than 4 hours during and 8-hour

workday and walking for no more than 3 hours during an 8-hour workday." *See* 20 C.F.R. § 416.967(b) (defining light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and explaining that a "job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls"). SSR 83-10 provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." However, while limiting a claimant "to only 3 hours of standing or walking is inconsistent with 'the full range of light work,'" it is "not inconsistent with 'light work.'" *Whitcher v. Saul*, No. 1:18-CV-00377-REB, 2020 WL 2771946, at *10 (D. Idaho May 27, 2020); *see also Devore v. Comm'r of Soc. Sec.*, No. 1:14-cv-00663-SAB, 2015 WL 3756328, *4 (E.D. Cal. June 16, 2015) ("the limitation of four hours standing/walking is not necessarily inconsistent with the 'light work' jobs identified by the DOT"); *Lewis v. Berryhill*, No. ED CV 16-01028-DFM, 2017 WL 3498625, at *5 (C.D. Cal. Aug. 15, 2017) ("there was no conflict" between a limitation to standing/walking for up to four hours and the DOT description for the light jobs of electronics worker and bench assembler); *Saiz v. Astrue*, No. EDCV 11–00290–MAN, 2012 WL 1155946, at *4 (C.D. Cal. Apr. 6, 2012) ("not all light work jobs require standing or walking" for six hours out of an eight-hour workday, and therefore there was no conflict between an RFC precluding a plaintiff from standing for more than four hours and the light work of bench assembler).

The ALJ rejected Dr. Johnson's "postural limitations other than for climbing ladders, ropes and scaffolds." But, as the Commissioner correctly observes, the jobs identified by the ALJ at step five do not require climbing, balancing, stooping, kneeling, crouching, or crawling. Def. Br. 13; *see* DOT 206.685-018, *available at* 1991 WL 671755 (inserting-machine operator);

DOT 726.687-010, available at 1991 WL 679633 (electronics worker); DOT 739.687-030, *available at* 1991 WL 680180 (assembler, small products II). Therefore, even if the ALJ erred in assessing Dr. Johnson's medical opinion, it is harmless. *See Simmons v. Colvin*, 639 F. App'x 446, 447 (9th Cir. 2016) (finding "any error in failing to incorporate certain postural limitations into the RFC was harmless because none of the jobs the ALJ identified at step four of the sequential analysis require climbing, balancing, stooping, kneeling, crouching, or crawling"); *Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008) (finding the ALJ's failure to incorporate all of the postural limitations identified by the claimant's physicians was harmless error because it did not erode the number of jobs the claimant could do).

### III.     State Agency Physicians

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Kehrli and Dr. Nisbet, the state agency physicians, without properly considering SSR 12-2p. Pl. Br. 15. Drs. Kehrli and Nisbet opined that plaintiff could perform light work but had postural limitations regarding frequent climbing, stooping, kneeling, crouching, and crawling. Tr. 63, 80-81. Again, as discussed above, this error is harmless because none of the occupations the ALJ identified at step five involve those postural limitations.

### IV.     The Lay Witness Testimony

Plaintiff argues that the ALJ erred in failing to consider the lay witness statement of her mother. Pl. Br. 17.

For claims filed on or after March 27, 2017, new regulations provide that the ALJs are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d); 416.920c(d). Consequently, there is an argument the ALJ is no longer required to provide reasons that are germane to reject lay witness testimony. *See Wendy J.C. v. Saul*, No.

3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . .' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d). As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in *Wendy J.C.*); *but see Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

The ALJ did not mention plaintiff's mother's statements in the decision. *See* Tr. 15-22. But plaintiff's mother's statements were similar to plaintiff's own subjective complaints. Thus, to the extent the ALJ gave a clear and convincing reason supported by substantial evidence to discount plaintiff's subjective complaints, and plaintiff's mother's testimony repeated plaintiff's complaints, any error by the ALJ in failing to consider plaintiff's mother's testimony is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (holding that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  January 3, 2022.

/s/ Youlee Yim You  
Youlee Yim You  
United States Magistrate Judge